1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SHEILA GIANELLI,                    No.  2:21–cv–0477–JAM–KJN PS

12              Plaintiff,               ORDER & FINDINGS AND
                                         RECOMMENDATIONS
13        v.
                                         (ECF No. 17)
14   RONALD STEVEN SCHOENFELD, et
     al.,

15
                Defendants.
16

17

18        Presently before the court is plaintiff's motion to remand this case to state court.[1]  (ECF

19   No. 17.)  All four of the active defendants in this case filed a joint opposition, to which plaintiff

20   replied.[2]  (ECF Nos. 23, 26.)  The court took the motion under submission pursuant to Local

21   Rule 230(g).  (ECF No. 25.)  For the following reasons, the undersigned recommends denying the

22   motion to remand.

23   _____

24   [1] Because plaintiff is representing herself, this action is referred to the undersigned for all pretrial
     proceedings, pursuant to 28 U.S.C. § 636, Federal Rule of Civil Procedure 72, and Local
25   Rule 302(c)(21).

26   [2] The court accepts plaintiff's reply brief although it was filed six days late, on May 19, 2021.
     See Local Rule 230(d) (reply due 7 days preceding hearing date, making the deadline May 13,
27   2021 in this case).  The court will not consider untimely filings in the future, however.  The court
     also notes that the five-page reply brief plaintiff submitted contains two page 3s, one before
28   page 4 and one after, and does not contain a page 5 with a final signature line.  (See ECF No. 26.)

                                         1

**BACKGROUND**

On January 29, 2021, plaintiff Sheila Gianelli filed this suit in California state court, naming five defendants. (ECF No. 1.1 (Complaint in <u>Gianelli v. Schoenfeld, et al.</u>, Cal. Sup. Ct., San Joaquin Cty., No. STK-CV-UMR-2021-0000849).) The complaint asserts six state employment law causes of action and two federal causes of action for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (<u>Id.</u> at 15-26.) The complaint generally stems from alleged retaliation plaintiff experienced at work after reporting a co-worker's conspiracy to defraud their mutual employer, Pacific Gas and Electric Company ("PG&E").[3]

Over the next several weeks, plaintiff filed in the state court proofs of service of the summons and complaint on each of the five defendants. (ECF No. 18 (Gianelli RJN) at 4-20, Exs. A-E).[4] As reflected in the proofs of service, process servers personally served the four individual defendants as follows: defendant Nick Dujmovich was served in Texas on January 30, 2021 (ECF No. 18 at 4, Ex. A); defendant Ronald Schoenfeld was served in Arizona on February 6, 2021 (<u>id.</u> at 7, Ex. B); defendant Debra Silver was served in California on February 15, 2021 (<u>id.</u> at 16, Ex. D); and defendant Lance Schultz was served in California on February 19, 2021 (<u>id.</u> at 19, Ex. E). As for the corporate defendant, PG&E, the proof of service shows that the company was served by substituted service on February 17, 2021. (<u>Id.</u> at 11, Ex. C.)

The case proceeded in state court for a short while. As relevant to this motion, on March 11, 2021, counsel for PG&E, Mr. Bren Thomas—who also represents defendants Schultz and Dujmovich—filed in the state court a Notification of Effective Date of Chapter 11 Plan and Imposition of Plan Injunction ("Notification of Plan Effective Date"). (ECF No. 23.2; <u>see</u> ECF

---

[3] The court reserves recitation of the full factual allegations for resolution of the co-pending motions to dismiss this case. (ECF Nos. 6, 19.)

[4] The court, on its own motion, takes judicial notice of the state court docket, which is a matter of public record, and all state court filings provided in support of the parties' briefs. <u>See</u> <u>Porter v. Ollison</u>, 620 F.3d 952, 955 n.1 (9th Cir. 2010) (taking judicial notice of docket in state court proceedings); <u>United States v. Howard</u>, 381 F.3d 873, 876 n.1 (9th Cir. 2004) (courts may take judicial notice of public records, including court records from another case).

No. 23.1 (Thomas Decl.) ¶ 3.) The three-page Notification of Plan Effective Date advised the state court and plaintiff of several key details of PG&E's ongoing bankruptcy proceeding and its effect on plaintiff's claims against PG&E. The Notification of Plan Effective Date stated that on January 29, 2019, PG&E Corporation and PG&E each filed in the Northern District of California petitions for bankruptcy under Chapter 11; that the bankruptcy court confirmed PG&E's Chapter 11 Plan of Reorganization on June 20, 2020; that the effective date of the Plan occurred on July 1, 2020, and as a result the Plan had been "substantially consummated," and PG&E had been "revested with [its] property, and discharged from [its] debts" as provided in the Plan; that prior to the July 1, 2020 Plan effective date, an automatic stay was in place under 11 U.S.C. § 362(a); and that as of the confirmation of the Plan, a permanent injunction applied to enjoin plaintiff's claims against PG&E. (ECF No. 23.2 at 2-4.) Beneath counsel's signature on the Notification of Plan Effective Date, an italicized statement reads: *"No general appearance intended; appearance for limited purpose of notifying court that action is enjoined as to PG&E."* (Id. at 4.)

A few other state court filings, all regarding defendant Dujmovich, deserve note. On March 15, 2021, with no answer or appearance by Dujmovich, plaintiff requested entry of default against him, which the state court entered the same day (without granting default judgment). (ECF No. 17 at 8; ECF No. 23.1 (Thomas Decl.) ¶ 4.) On March 22, 2021, Dujmovich objected to entry of default on the ground that there was no personal jurisdiction over him, as he is domiciled in Texas and does not have sufficient minimum contacts with California. (ECF No. 17.1 (Gianelli Decl.) at 10-13, Ex. B.) And on March 30, 2021, Dujmovich moved the state court to quash the summons served on him—so as to set aside the default—for lack of personal jurisdiction. (ECF No. 18 (Gianelli RJN) at 22-30, Ex. F; ECF No. 23.3 (Thomas Decl.) ¶ 6.)

Meanwhile, on March 16, 2021, defendant Silver—represented by her own separate counsel, Mr. Peter Rausch—filed a notice of removal removing the case to this court ("Notice of Removal"). (ECF No. 1.) The Notice of Removal confirmed that defendant Silver first received a copy of the complaint when she was served on February 15, 2021, and it invoked this court's subject-matter jurisdiction based on the federal questions raised by the RICO claims. (Id. at 2.)

3

Regarding the other defendants' consent, the Notice of Removal stated: "All other defendant(s) who have been served with Summons and complaint [sic] have joined in this Notice of Removal, as evidenced by the Joinders of defendants Ronald Steven Schoenfeld and Lance Schultz, filed concurrently herewith."[5] (Id.) It made no express mention of the other two defendants, Dujmovich and PG&E.

On April 8, 2021, Dujmovich made his first appearance in this court by filing a joinder to the Notice of Removal. (ECF No. 13.) The joinder specified that "By this joinder, Mr. Dujmovich does not waive any objections as to service, jurisdiction, or venue, or any other defenses or objections to this action. Mr. Dujmovich intends no admission or fact, law or liability by this joinder, and expressly reserves all defenses, motions, and/or pleas." (Id. at 2.) PG&E has not entered any appearance in the action in this court—and did not participate in the state court proceeding after filing the Notification of Plan Effective Date.

On April 15, 2021, exactly 30 days after the Notice of Removal, plaintiff timely filed the instant motion to remand, asserting procedural defects in the removal. (ECF No. 17.) See 28 U.S.C. § 1447(c) (providing 30 days to move to remand "on the basis of any defect other than lack of subject matter jurisdiction").[6]

**LEGAL STANDARD**

A defendant generally may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "The mechanics and requirements for removal are governed by 28 U.S.C. § 1446." Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1139 (9th Cir. 2013). To remove an action, the

---

[5] No separate joinders were "concurrently" filed, but defendant Schoenfeld filed his joinder to the notice of removal the next day, March 17, 2021 (ECF No. 5), and defendant Schultz filed his joinder on April 1, 2021 (ECF No. 11). Mr. Rausch attests that he attempted to e-file joinders on behalf of Schultz and Schoenfeld as authorized by their respective attorneys, but the court's clerk's office rejected them because they had to be filed by each party's own attorney. (ECF No. 23.3 (Rausch Decl.) ¶ 7.) Plaintiff does not challenge the timing or effect of these joinders.

[6] Two motions to dismiss—one by defendant Silver, and a joint motion by defendants Schultz and Dujmovich—are also pending and will be addressed in a subsequent order after their briefing is complete. (See ECF Nos. 6, 19.)

4

removing defendant(s) "shall file [in the appropriate district court] a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). Each defendant has 30 days after receiving the initial pleading or summons evidencing the case's removability to file a notice of removal. 28 U.S.C. § 1446(b)(1), (b)(2)(B); see Destfino v. Reiswig, 630 F.3d 952, 955-56 (9th Cir. 2011).

When there is more than one defendant in the action, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A); see Destfino, 630 F.3d at 956; Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193 n.1 (9th Cir. 1988). This is commonly referred to as the unanimity requirement, or rule of unanimity. Lewis v. City of Fresno, 627 F. Supp. 2d 1179, 1182 (E.D. Cal. 2008). The Ninth Circuit does not require each defendant to submit written notice of consent, so long as at least one defendant's attorney certifies in the notice of removal that all defendants consent to removal. Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1224-25 (9th Cir. 2009) ("One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient."). And, as implied in the rule itself, there are exceptions to the unanimity requirement. Most relevant to this case is the exception for defendants who were not properly served before notice of removal. See Destfino, 630 F.3d at 957 ("Because none of the non-joining defendants was properly served, their absence from the removal notice did not render the removal defective."); Salveson v. W. States Bankcard Ass'n, 731 F.2d 1423, 1429 (9th Cir. 1984) ("Our circuit rule is that a party not served need not be joined [in the petition for removal.]"), superseded by statute on other grounds. Absent an applicable exception, however, failure to comply with the unanimity requirement renders the removal procedurally defective. See Emrich, 846 F.2d at 1193 n.1.

"A correlate rule to the unanimity requirement and its exceptions logically follows . . . ." Mitchell v. Paws Up Ranch, LLC, 597 F. Supp. 2d 1132, 1135 (D. Mont. 2009). "Where fewer than all the defendants have joined in a removal action, the removing party has the burden under

section 1446(a) to explain affirmatively the absence of any co-defendants in the notice for removal." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1266 (9th Cir. 1999), superseded by statute on other grounds as stated in Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006). "If, for example, named co-defendants believe an exception to the unanimity rule applies to them and therefore they are not required to join in the notice of removal, the removing defendants should explain this in their notice." Paws Up Ranch, 597 F. Supp. 2d at 1135-36. Failure to explain the absence of consent from any co-defendant is also a procedural defect. Prize Frize, 167 F.3d at 1266 (holding that a notice of removal was "facially deficient" for not explaining why all non-joining defendants had not consented).

"[T]he defendant always has the burden of establishing that removal is proper." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009). "If the removal suffers from procedural defects, the plaintiff is responsible for bringing those defects to the attention of the district court in a timely motion to remand." Polo v. Innoventions Int'l, LLC, 833 F.3d 1193, 1196 (9th Cir. 2016).[7] "Once the plaintiff raises a procedural defect in the removal, it is the removing defendant's burden to show compliance with the pertinent procedural requirement." Smith v. Furniture Deals, Inc., No. 1:19-CV-1557-AWI-EPG, 2020 WL 429130, at *3 (E.D. Cal. Jan. 28, 2020).

**DISCUSSION**

Plaintiff argues that remand is warranted because (1) the Notice of Removal failed to affirmatively explain the absence of consent by Dujmovich and PG&E, (2) not all defendants consent to removal, based on PG&E's silence and Dujmovich's purportedly "ambiguous" and arguably untimely subsequent joinder to the notice of removal, and (3) this case is better adjudicated in state court. (ECF No. 17 at 5-10.) Because Dujmovich and PG&E's different circumstances dictate different analyses, the court addresses these arguments separately for each defendant, beginning with PG&E.

---

[7] District courts cannot "remand a case sua sponte for a non-jurisdictional defect in procedure." Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co., 346 F.3d 1190, 1191 (9th Cir. 2003).

**A. There Was No Need to Obtain PG&E's Consent to Removal, or to Explain the Absence of PG&E's Consent to Removal**

Plaintiff is correct that (1) PG&E never filed anything indicating it joins in or consents to removal, and (2) defendant Silver's Notice of Removal did not explain the absence of PG&E's consent. (ECF No. 17 at 5.) However, neither ground presents a basis for remand because of PG&E's bankruptcy discharge.

### *1. Lack of Consent from PG&E*

The court concludes that the "non-served defendant exception" to the rule of unanimity applies to excuse PG&E's failure to join in removal here—but for a slightly different reason than that asserted by defendants. Defendants argue that any purported service on PG&E was ineffective because "PG&E had filed a petition for bankruptcy in 2020, such that an automatic stay pursuant to 11 U.S.C. § 362(a) was in effect as to Plaintiff's claims against PG&E," and a bankruptcy debtor cannot be served with process while an automatic stay is in effect. (ECF No. 23 at 6.) This may be true as a matter of law, but defendants get the facts wrong.

First, PG&E filed its voluntary petition for Chapter 11 bankruptcy in 2019, not 2020. See In re: PG&E Corp. and Pacific Gas and Electric Co., No. 19-30088 (Bankr. N.D. Cal., filed Jan. 29, 2019), ECF No. 1.[8] Moreover, based on the limited information provided to this court regarding that bankruptcy case, it appears that PG&E was actually *discharged* from its debts many months before plaintiff filed her case on January 29, 2021, and served PG&E on February 17, 2021—so the automatic stay was no longer in effect by then.

In response to the motion to remand, defendants request judicial notice of the Order Confirming Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 ("Confirmation Order")—and its attached Plan of Reorganization—entered in the bankruptcy case, In re: PG&E Corp., No. 19-30088 (Bankr. N.D. Cal.), at ECF No. 8053.

---

[8] The jointly administered bankruptcy cases were filed out of concerns over the utility companies' potential liability for causing wildfires that ravaged California in 2017 and 2018. Under the terms of the since-confirmed Chapter 11 Plan of Reorganization, PG&E and PG&E Corporation agreed, among other things, to contribute billions of dollars to certain newly established fire trusts and funds. (ECF No. 24.1 at 25, 27.)

(Defendants' RJN, ECF Nos. 24-24.1.)  That request is granted.  According to both the Confirmation Order and the identically worded relevant provisions of the Chapter 11 Plan itself, subject to certain inapplicable exceptions, "[u]pon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise expressly provided in the Plan or in this Confirmation Order, the Debtors shall be discharged to the fullest extent permitted by section 1141 of the Bankruptcy Code . . . ."  (ECF No. 24.1 at 48, ¶ 49 ("Discharge of the Debtors"); id. at 151, § 10.3.)

Section 1141 of the Bankruptcy Code governs the effect of an order of confirmation of a plan of reorganization under Chapter 11.  Unless otherwise provided in a confirmation order or in a reorganization plan, "the confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation."  11 U.S.C. § 1141(d)(1).  The Confirmation Order in this case specified that discharge would take effect upon the Effective Date, which ultimately occurred on July 1, 2020.  See In re: PG&E Corp., No. 19-30088 (Bankr. N.D. Cal.), ECF No. 8252 (Notice Regarding Entry of Confirmation Order and Occurrence of Effective Date, filed July 2, 2020).  Thus, the automatic stay appears to have terminated as of July 1, 2020, more than six months before plaintiff served PG&E with her state court summons and complaint.  See 11 U.S.C. § 362(c)(2) (automatic stay "continues until the earliest of--(A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is . . . a case under chapter 9, *11*, 12, or 13 of this title, *the time a discharge is granted or denied*") (emphasis added); In re Howes, 246 B.R. 280, 290 (Bankr. W.D. Ky. 2000) ("It is clear that under § 362(c) the automatic stay is not unlimited in its duration, but terminates upon the earliest of three events: (1) the closing of the case; (2) the dismissal of the case; or (3) the entry or denial of a discharge.").

Defendants' single paragraph of argument on this point provides no explanation for their position that the automatic stay was still in effect at the time of plaintiff's substituted service on PG&E.  (ECF No. 23 at 6.)  Nevertheless, even assuming the automatic stay terminated on July 1, 2020, it was immediately replaced with the customary discharge injunction, which for the following reasons also prevented plaintiff's later service on PG&E from having legal effect.

///

Section 524 of the Bankruptcy Code provides in relevant part that a "discharge"

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section . . . 1141 . . . of this title, whether or not discharge of such debt is waived; [and]

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a). "Once a discharge is entered, the permanent injunction of § 524 replaces the automatic stay of § 362 and prevents creditors from ever collecting a discharged debt." In re Howes, 246 B.R. at 290 (emphasis and internal quotation marks omitted); In re Jones, 348 B.R. 715, 718 (Bankr. E.D. Va. 2006) (explaining that when discharge is granted or denied, "the automatic stay is replaced by the discharge injunction" (citing § 524(a)).

"In this context, a debt is defined as liability on a claim," In re Jackson, 2017 WL 2371111, at *4 (Bankr. D. Conn. May 30, 2017), and the term "claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). "For purposes of the discharge in bankruptcy, a claim arises at the time of the events giving rise to the claim, not at the time plaintiff is first able to file suit on the claim." In re Lombard Flats, LLC, No. BK 09-32219 DM, 2014 WL 3963009, at *7 (N.D. Cal. Aug. 13, 2014) (citing In re Heilman, 430 B.R. 213, 219-20 (9th Cir. B.A.P. 2010)).

Here, although plaintiff did not sue PG&E until January 2021, she is asserting a legal right to payment based on events that concluded in August 2017. (See ECF No. 1.1 ¶¶ 35-36 (alleging that retaliation ended and her career "flourished" after she was approved for a new role on August 7, 2017).) Thus, any claim plaintiff held against PG&E for its part in those events asserted in the instant lawsuit arose well before PG&E filed its Chapter 11 bankruptcy petition in January 2019. And PG&E's liability on that claim—i.e., its "debt" to plaintiff—was apparently discharged (at the latest) on the Chapter 11 Plan effective date of July 1, 2020.

By statute, this discharge automatically enjoined "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset" that pre-petition

debt. 11 U.S.C. § 524(a)(2). In addition, the bankruptcy court issued its own discharge injunction, as permitted by 11 U.S.C. § 524(g)(1)(A) ("After notice and hearing, a court that enters an order confirming a plan of reorganization under chapter 11 may issue, in connection with such order, an injunction in accordance with this subsection to supplement the injunctive effect of a discharge under this section."). As stated in the Confirmation Order and the identically worded relevant provisions of the Chapter 11 Plan, "[u]pon the Effective Date, all holders of Claims against or Interests in the Debtors shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or Interest in the Debtors." (ECF No. 24.1 at 48, ¶ 49 ("Discharge of the Debtors"); id. at 151, § 10.3.) The Confirmation Order and the Chapter 11 Plan further specify that (again subject to inapplicable exceptions) as of the entry of the Confirmation Order and "subject to the occurrence of the Effective Date":

> [A]ll Entities who have held, hold, or may hold Claims[9] or Interests are, with respect to any such Claim or Interest, **permanently enjoined** after the entry of the Confirmation Order from: **(i)** commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, . . . ; and **(v)** commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan . . . .

(ECF No. 24.1 at 49-50, ¶ 52(a) (emphasis added); id. at 152, § 10.6(a).)

These provisions of the Plan and Confirmation Order were highlighted in PG&E's March 11, 2021 Notification of Plan Effective Date, filed in the state court in this action. (ECF No. 23.2 at 3.) The Notification of Plan Effective Date stated that none of the specific limited exceptions in the Plan "apply to the claim or claims asserted against PG&E in this action," and accordingly "the Plan injunction applies to and enjoins the continued prosecution of this action except pursuant to the plan and the Chapter 11 claims reconciliation process." (Id. at 4 (emphasis

---

[9] The Plan defines "Entities" and "Claims" the same way the Bankruptcy Code does. (ECF No. 24.1 at 82, ¶ 1.25 and 85, ¶ 1.61.) See 11 U.S.C. §§ 101(5) (definition quoted above), 101(15) ("The term 'entity' includes person, estate, trust, governmental unit, and United States trustee.").

omitted).)  Therefore, even though defendants are likely wrong about the duration of the automatic stay, the discharge injunction similarly blocked plaintiff from prosecuting her claims against PG&E.[10]  (ECF No. 24.1 at 49-50, ¶ 52(a) (permanently enjoining the "commencing, conducting, or continuing in any manner . . . any suit . . . against . . . a Debtor").)  See 11 U.S.C. § 524(a)(2) (discharge "operates as an injunction against the commencement or continuation of an action, *the employment of process*, or an act, to collect, recover or offset" a discharged debt (emphasis added)).

The key question is whether plaintiff's service of process in a lawsuit seeking recovery for a pre-bankruptcy-petition claim against a debtor (PG&E) can be effective in the face of a pre-existing discharge injunction.  If so, PG&E would be a properly served defendant whose consent is required for removal; if not, PG&E's lack of consent is irrelevant under the non-served defendant exception to the rule of unanimity.

For the following reasons, the court concludes that the 2020 discharge injunction means that plaintiff's service on PG&E in 2021 was void from the moment it occurred.  Because that service was without legal effect, PG&E is not a "properly . . . served" defendant whose consent is required for removal.  See 28 U.S.C. § 1446(b)(2)(A); Destfino, 630 F.3d at 956.

The court's independent research reveals no federal cases determining the validity of service of process in a lawsuit for claims covered by a discharge injunction.[11]  An extensive 2005 opinion by the Bankruptcy Appellate Panel ("BAP") of the Ninth Circuit, however, strongly supports viewing such service of process as void.  See In re Gurrola, 328 B.R. 158 (9th Cir. B.A.P. 2005).[12]  In Gurrola, the BAP chronicled the legislative history of § 524(a)(1) to its

---

[10] Defendants' present position that the automatic stay was still in effect at the commencement of plaintiff's suit also runs counter to PG&E's own statements in the March 11th Notification of Plan Effective Date.  That notice indicates the automatic stay terminated upon the effective date, and advised that plaintiff's present claims were *enjoined*, not that they were stayed.  (ECF No. 23.2 at 3 ("*[P]rior to the Effective Date*, this action *was* stayed by the automatic stay under Section 362(a) . . . ." (emphasis added)); id. at 4 ("Plan injunction applies to and enjoins the continued prosecution of this action").)

[11] Defendants only briefed the impact of the allegedly existing automatic stay.

[12] Although decisions by the BAP are not binding on district courts or the court of appeals, "BAP

11

present formulation that a bankruptcy discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section . . . 1141 . . . of this title, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(1); <u>see</u> 328 B.R. at 164-70.  The BAP concluded that as of the date of the debtor's discharge in his prior bankruptcy case, "any judgment that [the creditor] at any time obtained on the discharged debt would automatically be rendered 'void' by § 524(a)(1)." <u>In re Gurrola</u>, 328 B.R. at 171.  Thus, the default judgment the creditor obtained in a subsequent bankruptcy case "was 'void' the instant it was entered." <u>Id.</u>  Further, the creditor's "activities in prosecuting its effort to obtain a default judgment and thereafter to collect upon it violated the discharge injunction." <u>Id.</u> (citing 11 U.S.C. § 524(a)(2)) (footnote omitted).

Crucially for present purposes, the BAP held that "judgments ***and acts*** in violation of the injunction are automatically ***void ab initio***, hence self-executing, for the same reasons as the [§ 362] automatic stay." <u>Id.</u> at 175 (citations omitted).  Primarily at issue in <u>Gurrola</u> was whether the debtor could waived the defense of "discharge in bankruptcy" by not raising it when challenging the default.  The BAP held that—based on Ninth Circuit precedent that actions violating a § 362 automatic stay are void, not voidable—the discharge defense is likewise absolute and nonwaivable.  <u>Id.</u> at 170, 175.  But the BAP also concluded that not only was the creditor's later obtained judgment void, but also the creditor's "actions in obtaining the judgment are void as having violated the discharge injunction." <u>Id.</u> at 176.

Applying the persuasive authority of <u>Gurrola</u> to the present case, any actions by plaintiff in seeking to obtain judgment against PG&E for a discharged debt—its liability for the present claims that arose pre-bankruptcy—violate the 2020 discharge injunction for the reasons explained above and are thus void ab initio (meaning "from the very start").  Plaintiff's efforts to serve PG&E with process were taken for the purpose of bringing PG&E into the present suit in order to obtain judgment against PG&E.  The February 17, 2021 service on PG&E was therefore void,

opinions may be 'persuasive and aid [courts in their] reading of the Bankruptcy Code." <u>Shapiro v. Henson</u>, 739 F.3d 1198, 1201 n.3 (9th Cir. 2014) (quoting <u>In re Healthcentral.com</u>, 504 F.3d 775, 784 n.3 (9th Cir. 2007)).

that is, without legal effect.[13]

This conclusion is bolstered by the fact that the Ninth Circuit's interpretations of § 362 make it easy to equate the effect of a § 362 automatic stay with that of a § 524(a) injunction. The Ninth Circuit, sitting en banc, held in In re Gruntz that automatic stays are "self-executing, effective upon the filing of the bankruptcy petition," and that "actions taken in violation of the automatic stay are void." 202 F.3d 1074, 1081, 1082 (9th Cir. 2000) (citing 11 U.S.C. § 362(a)). Although § 362(a) speaks in terms of "stay[ing]" all manner of collection efforts upon the filing of a bankruptcy petition, in effect "[t]he automatic stay is an ***injunction*** issuing from the authority of the bankruptcy court." In re Gruntz, 202 F.3d 1082 (emphasis added); see id. at 1081 ("The automatic stay sweeps broadly, ***enjoining*** the commencement or continuation of [collection efforts against the debtor]." (emphasis added)).

With this gloss, § 362(a)(1) and (a)(6) in combination almost perfectly mirror the text of § 524(a)(2). Compare 11 U.S.C. § 362(a) (providing that a bankruptcy petition "operates as a stay . . . of (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor [that was or could have been brought before the bankruptcy petition]; . . . [and] (6) any act to collect, assess, or recover a claim against the debtor [that arose pre-petition]), with 11 U.S.C. § 524(a)(2) (providing that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor"). In a slightly separate context, the Ninth Circuit also stated that a "discharge injunction prevents [creditors, i.e., plaintiff in this case,] from even commencing [a] second suit" "to try to enforce the debt" post-discharge. Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1200 (9th Cir. 2008), aff'd, 559 U.S. 260, (2010). The undersigned is thus persuaded that the Ninth Circuit would hold a party's actions taken in

---

[13] Plaintiff's service of process and continued prosecution of this case against PG&E were and are done at peril of contempt proceedings in the bankruptcy court. See In re Gurrola, 328 B.R. at 175-76. Discharge injunctions are enforced by the bankruptcy court that issued the confirmation order. Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186, 1189, 1191 (9th Cir. 2011) ("an order of contempt under [11 U.S.C.] § 105 to enforce an existing injunction must be sought via motion in the bankruptcy action").

violation of a discharge injunction to be just as void as a party's actions taken in violation of an automatic stay.[14]

Because plaintiff's service of process on PG&E in this case was void, it is as though PG&E was never served. See Black's Law Dictionary (11th ed. 2019) (defining "void" as "[o]f no legal effect"). Treating PG&E as never having been served, as we must, the "non-served defendant" exception to the rule of unanimity applies. See Salveson, 731 F.2d at 1429 (noting circuit rule that "a party not served need not be joined" for purposes of removal). Accordingly, PG&E's lack of consent to removal is not a procedural defect.[15]

### 2. Failure to Explain the Absence of PG&E's Consent

Plaintiff also presents a corollary argument that the Notice of Removal is facially defective because it fails to explain the absence of PG&E's consent. (ECF No. 17 at 5-6.) Defendants do not acknowledge this argument as it relates to PG&E, focusing instead solely on why their failure to explain the absence of consent from Dujmovich was cured by his later joinder (an argument addressed in the next section). And plaintiff is completely correct that the removing defendants should have explained in the Notice of Removal why PG&E was not joining in or consenting to removal. See Paws Up Ranch, 597 F. Supp. 2d at 1135-36 (if removing defendants believe an exception to the unanimity rule applies such that they are not required to join in the notice of removal, they "should explain this in their notice").

Although defendant Silver's Notice of Removal makes some acknowledgement of this

---

[14] Because plaintiff's service of process is "void" not "voidable," it is irrelevant that PG&E has not directly challenged the effectiveness of service in this case. Cf. In re Gurrola 328 B.R. at 167 ("[T]here is no requirement that the fact of bankruptcy protection be raised in the state court." (discussing the Supreme Court's interpretation of the impact of automatic stays in Kalb v. Feuerstein, 308 U.S. 433, 444 (1940)).

[15] Without the benefit of briefing by the parties, the court does not rule on PG&E's status as a defendant in this case, beyond holding that the February 2021 service was a nullity for purposes of removal procedure. One district court relied on Gurrola to conclude that a bankruptcy discharge effectively acts as a "jurisdictional bar" to the continuation of claims against a covered debtor. See Stewart v. Stoller, No. 2:07-CV-552, 2014 WL 585442, at *2-3 (D. Utah Feb. 14, 2014) (dismissing debtor as defendant, based on information in case status report). The undersigned is unwilling to go so far as to recommend dismissing PG&E from this action on the present thin record.

14

requirement, the Notice of Removal plainly does not "affirmatively explain" the absence of consent by PG&E (or Dujmovich, addressed below).  The Notice of Removal simply states:  "All other defendant(s) who have been served with Summons and complaint have joined in this Notice of Removal, as evidenced by the Joinders of defendants Ronald Steven Schoenfeld and Lance Schultz, filed concurrently herewith."  (ECF No. 1 at 2.)  This statement *implies* that the reason PG&E and Dujmovich were not joining is that they had not been served.  It certainly does not "affirmatively explain" their absence, however, and even the implied explanation is refuted by the proofs of service on those two defendants, which plaintiff filed in the state court.  Defendants likely could have avoided this entire motion if they had simply stated that PG&E was not joining in the removal because plaintiff's service upon it was without effect, pursuant to the discharge injunction.

The law is clear that they should have done so.  The Ninth Circuit case establishing this affirmative explanation requirement frames the requirement in all-or-nothing terms:  "Where fewer than all the defendants have joined in a removal action, the removing party has the burden under section 1446(a) to explain affirmatively the absence of *any* co-defendants in the notice for removal."  Prize Frize, 167 F.3d at 1266 (emphasis added).  Defendants' opposition to the remand motion does not even cite this case, which many courts have used to remand cases that fail to affirmatively explain a co-defendant's silence, sometimes even when the absent co-defendant was not properly served.[16]  Nevertheless, after much reflection, the undersigned concludes that the

---

[16] See Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1267-68 (D. Or. 2001) (defendant had affirmative duty to explain absence of co-defendants from notice of removal, even if co-defendants were not properly served and defendant was removing a claim separate and independent from those brought against co-defendants) (collecting cases); Sotelo v. Browning-Ferris Indus. of California, Inc., No. 2:20-CV-06927-SB-PVC, 2020 WL 7042816, at *3 (C.D. Cal. Nov. 30, 2020) (Prize Frize "requires an explanation for the absence of co-defendants who have not been served"; remanding because notice of removal lacked such explanation, and later joinders were untimely); Vargas v. Riley, No. 18-CV-00567-JST, 2018 WL 2267731, at *3 (N.D. Cal. May 17, 2018) (remanding for failure to explain absence of co-defendants in notice of removal, which was uncured within 30-day statutory period); Boyett Constr., Inc. v. Allianz Glob. Risks U.S. Ins. Co., No. 2:14-CV-00607-GEB-AC, 2014 WL 2093569, at *1 (E.D. Cal. May 19, 2014) (notice of removal was procedurally deficient because removing defendant "has not satisfied its burden of affirmatively explaining why it failed to obtain [co-defendant's] joinder in or consent to the removal"); Canterbury Lots 68 LLC v. Esposito, No. CV 5:11-01880 SVW

1    failure to affirmatively explain PG&E's absence in the Notice of Removal does not warrant

2    remand in this case.

3         The court finds most instructive <u>Mitchell v. Paws Up Ranch, LLC</u>, 597 F. Supp. 2d 1132

4    (D. Mont. 2009), a case not cited by either side.  In <u>Paws Up</u>, the plaintiff challenging removal

5    argued for a formal application of the <u>Prize Frize</u> affirmative explanation requirement, contending

6    that a notice of removal must explain the absence of all co-defendants, regardless of the

7    surrounding circumstances.  <u>See</u> 597 F. Supp. 2d at 1136-37 (explaining plaintiff's reliance on

8    <u>Riggs v. Plaid Pantries, Inc.</u>, 233 F. Supp. 2d 1260, 1268 (D. Or. 2001), which held that <u>Prize</u>

9    <u>Frize</u>'s explanation requirement "applies to ***all*** co-defendants, even those who are exempted from

10   joinder because they were not served or were fraudulently joined").  The court rejected plaintiff's

11   argument and held that because plaintiff "was fully aware that he had not accomplished service

12   on [the unexplained non-consenting defendant] at the time of removal," there was no need to

13   "explain affirmatively what the plaintiff already knows."  <u>Paws Up</u>, 597 F. Supp. 2d at 1136,

14   1139, 1141.  The court distinguished the scenarios in <u>Prize Frize</u> and <u>Riggs</u> that engendered their

15   bright-line formulations of the explanation requirement, and it discerned a policy reason for the

16   rule as stated in those cases:  "The requirement that a removing defendant explain affirmatively

17   the absence of non-joining defendants serves the purpose of giving the plaintiff notice regarding

18   his obligations pertaining to service of process."  <u>Id.</u> at 1137 (discussing how in <u>Prize Frize</u>, 167

19   F.3d at 1266, the Ninth Circuit dealt with a notice of removal that "merely indicated that some of

20   the absent defendants might challenge service of process" and found that "explanation was

21   insufficient to put the plaintiff on notice of who was challenging what in terms of service of

22   process").  The court in <u>Paws Up</u> refused to require the removing defendants to "provide an

23   _____

24   (SSx), 2011 WL 6100967, at *2 (C.D. Cal. Dec. 5, 2011) (remanding because defendant offered
     no explanation for absence of co-defendants); <u>Valley Forge Ins. Co. v. APL Co. Pte.</u>, No. CV 09-
25   09323 MMM (VBKx), 2010 WL 960341, at *3-5 (C.D. Cal. Mar. 16, 2010); <u>Parking Concepts,</u>
     <u>Inc. v. RSUI Group, Inc.</u>, No. CV 09-5143 PSG (AJWx), 2009 WL 2973118, at *3 (E.D. Cal.
26   Sept. 11, 2009); <u>Anderson v. Kaz, Inc.</u>, No. 08-CV-253-BR, 2008 WL 2477559, at *3 (D. Or.
     June 12, 2008).  <u>See also</u> 16 Moore's Federal Practice - Civil § 107.42 (2021) (citing cases
27   "remanded to state courts at least in part because a removal petition filed by less than all of the
     named defendants did not include an explanation for a co-defendant's absence").  Defendants'
28   opposition likewise does not acknowledge any of these cases.

16

explanation for the absence of other named defendants who have no obligation to even make an appearance because they are not yet parties to the action." Id. at 1139. It reasoned that, given the reason for the affirmative explanation rule—"to provide the plaintiff notice of issues regarding effectiveness of service of process"—requiring an explanation for a plaintiff who already knows he has not served the absent defendant "would impose on the removing defendants a merely perfunctory obligation." Id. Accordingly, the court denied the motion to remand.

Paws Up also relied in part on an unpublished decision of the Ninth Circuit in Fisher v. Alfa Chemicals Italiana, 258 F. App'x 150 (9th Cir. 2007). See 597 F. Supp. 2d at 1136. In Fisher, the Court of Appeals rejected the plaintiff's challenge to removal based on failure to explain why other named defendants did not join the notice of removal. 258 F. App'x at 151. The Ninth Circuit non-precedentially held that because "it was clear to [the plaintiff] and to the district court that none of the other defendants had been served, . . . there was no reason for [the removing defendant] to have provided such an explanation in this case." Id. (citing Emrich, 846 F.2d at 1193 n.1 for "the general rule that all defendants must join a removal petition 'applies, however, only to defendants properly joined and served in the action'").

The undersigned finds the reasoning of these cases persuasive and applicable to this case, even if not perfectly on point. The main difference with this case, of course, is that plaintiff here did arrange for substituted service on PG&E, which occurred on February 17, 2021. (ECF No. 18 at 11.) Plaintiff therefore may have believed that PG&E was a properly served defendant at the time of removal. However, the Notification of Plan Effective Date filed in state court five days before defendant Silver filed her Notice of Removal should have dispelled plaintiff of that belief. The March 11th Notification of Plan Effective Date clearly stated in bold, all-caps font that "the Plan injunction applies to and enjoins the continued prosecution of this action" against PG&E. (ECF No. 23.2 at 4.) Although the court does not expect plaintiff, who is self-represented, thereby became aware of all the bankruptcy law discussed in the previous section, the plain text of the March 11th Notification put her on notice that there was an obstacle to bringing PG&E into

this case as a defendant.[17]  Requiring defendants to repeat the existence of the discharge

injunction against plaintiff's claims in the Notice of Removal would, as in Paws Up, be a "merely

perfunctory obligation."  See 597 F. Supp. 2d at 1139.  Providing such an explanation would not

enable plaintiff to "cure" the obstacle to PG&E's prosecution in this case; there was nothing

plaintiff could do to change the fact of the bankruptcy discharge injunction.[18]

Under the statutory and court-ordered discharge injunction, plaintiff's service on PG&E

was ineffective, as explained above.  Accordingly, the undersigned sees no utility in requiring the

removing defendants to explain the absence of PG&E, who—as an unserved defendant—had "no

obligation to even make an appearance because [it is] not yet part[y] to the action."  See id.

at 1139.  As in Fisher, it was clear to plaintiff and to the court that PG&E could not be made party

to this case, given the discharge injunction, "so there was no reason for [the removing defendants]

to have provided such an explanation in this case."  258 F. App'x at 151.  While it would have

undoubtedly been the better practice to explain PG&E's failure to join in the notice of removal,

the lack of such explanation is not grounds for remand here.

**B. Dujmovich's Subsequent Joinder Cured the Procedural Defects Existing at the Time of Removal**

Plaintiff directs most of her motion to challenging the removal in relation to defendant

Dujmovich, as opposed to PG&E, but the court finds the issues with respect to Dujmovich

simpler to resolve because of his subsequent joinder in the removal.  Plaintiff applies the same

two general arguments discussed above for both PG&E and Dujmovich.  As to Dujmovich,

plaintiff argues for remand because (1) the Notice of Removal did not explain his absence, and

(2) Dujmovich still has not consented to removal because his later filed joinder was not timely

and was "ambiguous."  (ECF No. 17 at 5-7.)  The court disagrees with plaintiff on the second

---

[17] The Notification of Plan Effective Date also quoted the relevant portions of the injunction provisions of the Confirmation Order and the Plan.  (ECF No. 23.2 at 3.)

[18] "The only manner in which a debtor's personal liability on a pre-petition debt can survive a discharge is through an enforceable reaffirmation agreement between the debtor and creditor pursuant to 11 U.S.C. § 524(c)."  Stewart v. Stoller, No. 2:07-CV-552, 2014 WL 585442, at *3 (D. Utah Feb. 14, 2014) (cleaned up).

point and therefore need not reach the first.

To recap, Dujmovich was the first defendant served in this action. He was served in Texas on January 30, 2021. (ECF No. 18 at 4, Ex. A.) The other four defendants were served over the following weeks,[19] with defendant Schultz served last, on February 19, 2021. (Id. at 19, Ex. E). Defendant Silver filed her Notice of Removal on March 16, 2021, without expressly mentioning whether Dujmovich consented to removal. (ECF No. 1.) About three weeks later, on April 8, 2021, defendant Dujmovich filed his joinder to the Notice of Removal. (ECF No. 13.) The following week, plaintiff moved to remand. (ECF No. 17.) And the next day, defendants Dujmovich and Schultz—both represented by Mr. Thomas—filed a joint motion to dismiss. (ECF No. 19.)

Defendants' opposition to the remand motion sheds more light on the timing of Dujmovich's consent to removal. In a supporting declaration, Mr. Thomas avers that, "[b]ased on a misunderstanding of Mr. Dujmovich's description of the events, [he] mistakenly believed that Plaintiff had not properly served Mr. Dujmovich" on January 30th. (ECF No. 23.1 (Thomas Decl.) ¶ 2.) Therefore, when defendant Silver's counsel, Mr. Rausch, removed the action to this court on March 16, 2021, Mr. Thomas informed him that "Lance Schultz would join in the removal to federal court but that Mr. Dujmovich would not join because Plaintiff had not properly served him." (Id. ¶ 5.) However, on April 5, 2021, Mr. Thomas "learned that Plaintiff's January 30, 2021 service on Mr. Dujmovich was proper," leading him to file Dujmovich's joinder to the removal on April 8, 2021. (Id. ¶ 7.)

Plaintiff only obliquely argues that Dujmovich's April 8th joinder was untimely, because each consent had to be received "within 30 days of service of the complaint and summons." (ECF No. 17 at 6-7.) To the extent plaintiff believes Dujmovich could only consent to removal within 30 days of when he, himself, was served, she is incorrect. The Ninth Circuit adopted the "later-served defendant" rule back in 2011, and that rule was codified in the removal statute shortly after. See Destfino v. Reiswig, 630 F.3d 952, 955-56 (9th Cir. 2011); see also 28 U.S.C.

---

[19] Notwithstanding the prior discussion of how the substituted service on PG&E is without effect.

§ 1446(b)(2)(C) ("If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."). Thus, an earlier-served defendant (like Dujmovich in this case) gets a new opportunity to consent to removal upon the filing of a notice of removal by a later-served defendant (like defendant Silver in this case).

The question remains, *by when* must an earlier-served defendant like Dujmovich consent to a removal initiated by a later-served defendant like Silver? This is an open question in this circuit, as in many others, because the statute oddly does not specify a deadline. See § 1446(b)(2)(C). Defendants, however, never acknowledge the widely divergent ways the courts have answered this question.[20] Defendants simply argue in a single paragraph, citing a single district court case, that Dujmovich's April 8th joinder was timely because it was filed within 30 days of Silver's March 16th Notice of Removal. (ECF No. 23 at 7 (quoting Pattison v. Nevada ex rel. Nevada Dep't of Corr., No. 3:14-CV-00020-MMD, 2014 WL 2506467, at *7-9 (D. Nev. June 3, 2014).) Defendants' omission is particularly glaring because Pattison itself makes plain the unsettled nature of the question. See Pattison, 2014 WL 2506467, at *1 ("[T]he question of when a defendant's separate joinder or consent [to removal] must be filed to be timely does not appear to be definitively established in the Ninth Circuit . . . .").

Some courts, like Pattison, land on a deadline of 30 days after the notice of removal. See Wilburn v. Bratcher, No. 2:15-CV-0699-TLN-GGH, 2015 WL 9490242, at *4 (E.D. Cal. Dec. 30,

---

[20] See, e.g., Majewski v. Dick's Sporting Goods, Inc., No. 20-CV-6906, 2021 WL 76819, at *2 n.1 (N.D. Ill. Jan. 8, 2021) (comparing different approaches of courts across the country); Alston v. Wells Fargo Bank, N.A., 2017 WL 2839629, at *2 (D. Md. 2017) ("This temporal language [in § 1446(b)(2)(A)] suggests that all defendants must consent to removal, if not within their own 30-day window under § 1446(b)(2)(B), then *when* the case is actually removed, not at some undetermined point afterwards."); Palmeira v. CIT Bank, N.A., No. CV 17-00275 ACK-RLP, 2017 WL 4797515, at *4-5 (D. Haw. Oct. 24, 2017) (comparing different approaches and ultimately concluding that "consent must be filed within the 30-day period for removal . . . , not within 30 days of when the notice of removal was filed"); Gibbs v. Ocwen Loan Servicing, LLC, No. 3:14-CV-1153-M-BN, 2014 WL 2767206, at *2 (N.D. Tex. June 18, 2014) (consent to removal under § 1446(b)(2)(C) must be filed within the later-served defendant's 30-day removal period); Moore v. Svehlak, No. ELH-12-2727, 2013 WL 3683838, at *14 (D. Md. July 11, 2013) (consent to removal must be filed either within the earlier-served defendant's own 30-day removal window or concurrently with the later-served defendant's notice of removal).

20

2015) (citing <u>Hafiz v. Greenpoint Mortgage Funding, Inc.</u>, 652 F. Supp. 2d 1050, 1052 (N.D. Cal. 2009)).  But others criticize that deadline as disadvantaging plaintiffs who might then have to wait until that 30th day to file a motion to remand for lack of consent—while facing their own concurrent 30-day deadline to so move.  <u>See, e.g.</u>, <u>Palmeira v. CIT Bank, N.A.</u>, No. CV 17-00275 ACK-RLP, 2017 WL 4797515, at *5-6 (D. Haw. Oct. 24, 2017) (disagreeing with <u>Pattison</u> and holding that earlier-served defendants must consent within the 30-day period for later-served defendant to initiate removal, not within 30 days of the notice of removal).  If the court were to follow <u>Palmeira</u>, and the multiple other courts adopting its 30-day-removal-period deadline,[21] defendant Dujmovich's consent here would be too late, falling more than 30 days after service on the last-served defendant.[22]  <u>See</u> 28 U.S.C. § 1446(b)(2)(B), (C).

Luckily for defendants, however, it turns out that the court need not decide what deadline applies because the Ninth Circuit consistently approves of district courts allowing procedural defects in removal to be cured at any point prior to entry of judgment.  If the unanimity requirement is not met when a notice of removal is filed, "the district court may allow the removing defendants to cure the defect by obtaining joinder of all defendants prior to the entry of judgment."  <u>Destfino</u>, 630 F.3d at 956-57; <u>Soliman v. Philip Morris Inc.</u>, 311 F.3d 966, 970 (9th Cir. 2002) ("[A] procedural defect existing at the time of removal but cured prior to entry of judgment does not warrant reversal and remand of the matter to state court." (alteration in original

---

[21] <u>See, e.g.</u>, <u>A. N. v. Target Corp.</u>, No. CV 20-11380 PA (RAOx), 2021 WL 53169, at *2 (C.D. Cal. Jan. 5, 2021) (earlier-served defendant's consent to removal did not timely cure lack of unanimity because it was "filed well outside the 30-day removal period that began running when the last defendant was served with the Summons and Complaint"); <u>Sotelo v. Browning-Ferris Indus. of Cal., Inc.</u>, No. 2:20-CV-06927-SB-PVC, 2020 WL 7042816, at *4 (C.D. Cal. Nov. 30, 2020) ("numerous courts have affirmed that defendants must consent to removal within the 30-day removal period of the last-served defendant") (citations and internal quotation marks omitted); <u>Lopez v. Michael Weinig, Inc.</u>, No. CV 20-6012 PA (JEMx), 2020 WL 4192260, at *2 (C.D. Cal. July 17, 2020) (same, collecting cases); <u>Lewis v. HSBC Bank USA, N.A.</u>, 2017 WL 3671279, at *7-8 (D. Haw. Aug. 25, 2017) (same, noting that § 1446(b)(2)(C) "does not provide an open-ended opportunity to consent to removal at any time during the course of a case"); <u>Zambrano v. New Mexico Corr. Dep't</u>, 256 F. Supp. 3d 1179, 1186 (D.N.M. June 1, 2017) (same).

[22] Dujmovich consented on April 8, 2021, which is 48 days after the last-served defendant (Schultz) was served on February 19, 2021.

21

and internal quotation marks omitted)).[23]

Courts in this district, including the undersigned, routinely recognize later joinders to removal as curing prior procedural unanimity defects. See, e.g., Smith v. Furniture Deals, Inc., No. 1:19-CV-1557 AWI EPG, 2020 WL 429130, at *5 (E.D. Cal. Jan. 28, 2020) ("a violation of the defendant unanimity rule may be corrected prior to entry of judgment" (citing Destfino, 630 F.3d at 957); Wimberly v. Beard, No. 2:16-CV-0279-KJM-KJN-P, 2016 WL 5791228, at *3 (E.D. Cal. Aug. 26, 2016) (remand was unwarranted despite "untimely consent" because later joinder cured procedural defect and no judgment had been entered); see also Conroy v. Ridge Tool Co., No. 4:20-CV-05882-YGR, 2020 WL 8641963, at *4 (N.D. Cal. Nov. 18, 2020) ("Destfino instructs that the timeline for joinder is not strict . . . ."). The undersigned therefore concludes that defendant Dujmovich's joinder to removal, filed 23 days after the Notice of Removal, cured the prior unanimity defect—without opining on what the deadline is for earlier-served defendants to join a later-served defendant's notice of removal (if any).

Given that there is now unanimous consent to removal by all properly served defendants, the court need not address plaintiff's corollary argument that the Notice of Removal failed to affirmatively explain the absence of Dujmovich's consent. Violation of the affirmative explanation rule only supports remand where the unmentioned co-defendant never subsequently joins in or consents to removal. See Conroy, 2020 WL 8641963, at *5-6 (failure to explain absence of co-defendants was "not fatal to removal because any resulting defect was cured when [those defendants] joined the notice of removal," in that case more than 30 days after the last-served defendant); see id. at *6 & n.4 (noting that Prize Frize, 167 F.3d at 1266, held removal was improper because "because the removal notice was facially defective **and** the deficiencies [were] uncured within the thirty-day statutory period" and that the Ninth Circuit was primarily concerned

---

[23] But see Sotelo, 2020 WL 7042816, at *4 (critiquing application of Destfino's rule to cases in their early stages at the trial level). While true that this rule originated in appellate courts to avoid having to remand cases that came to the Court of Appeals after judgment was already rendered, Destfino explicitly approved of a court in this very district permitting co-defendants to join in removal several months after the notice of removal but quite early in the litigation. See Destfino v. Kennedy, No. CV-F-08-1269LJODLB, 2008 WL 4901195, at *2-5 (E.D. Cal. Nov. 12, 2008), aff'd sub nom. Destfino v. Reiswig, 630 F.3d 952 (9th Cir. 2011).

there with the lack of unanimity, "which was never cured").

Despite this conclusion, the court must emphatically reject defendants' assertion that the failure to mention PG&E or Dujmovich in the Notice of Removal was a "de minimis defect." (See ECF No. 23 at 5-6.)  The cases defendants cite in support of this argument all deal with failures to attach the requisite papers to a notice of removal—and unsurprisingly hold these administrative defects "both de minimis and curable."  Gray v. Extended Stay Am., Inc., No. 2:19-CV-01269-MCE-EFB, 2020 WL 1274265, at *5 (E.D. Cal. Mar. 17, 2020) (failure to attach "Civil Case Cover Sheet, Case Management Statement, ADR Packet, Notice and Acknowledgment of Receipt, and a state court order"); see Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1142 (9th Cir. 2013) (failure to attach original complaint); Countryman v. Farmers Ins. Exchange, 639 F.3d 1270, 1272-73 (10th Cir. 2011) (failure to attach summons). These sorts of technical omissions rarely prejudice the plaintiff or impede the court's ability to proceed with the case.  See Countryman, 639 F.3d at 1273.  By contrast, failing to explain the absence of consent from all named defendants leaves the court and the plaintiff totally in the dark as to whether the case can proceed in federal court.

Defendants now try to excuse the lack of affirmative explanation as occurring "due to a misunderstanding regarding service of Dujmovich."  (ECF No. 23 at 6.)  But that entirely misses the point.  The problem is not that defendants initially mistook Dujmovich for an improperly served defendant.  The problem is that they did not *explain in the Notice of Removal* that this was the reason Dujmovich was not joining in or consenting to removal.  The unanimity rule is core to ensuring that removal is fair and proper.  The affirmative explanation requirement is essential to enforcing that rule.  Although, as discussed above, a lack of affirmative explanation can be cured, that does not mean it is a "de minimis" defect.  Defendants cite no case supporting that proposition, nor is the court aware of any.

### 1. Plaintiff's Remaining Arguments

Plaintiff's remaining arguments for remand with respect to Dujmovich can be easily rejected.  Plaintiff argues that Dujmovich "filed an ambiguous Joinder reserving his right to object to the joinder at a later date, and continues to litigate this case in state court" by virtue of

23

his objection to the entry of default and his motion to quash. (ECF No. 17 at 6-7.) First, Dujmovich's statement in his joinder that he was not thereby "waiv[ing] any objections as to service, jurisdiction, or venue, or any other defenses or objections to this action" does not render his joinder "ambiguous" by any means. (ECF No. 13 at 2.) This statement does not say that Dujmovich is "reserving his right to object **to the joinder**," contrary to plaintiff's belief. (ECF No. 17 at 6 (emphasis added).) It merely makes explicit what was already true as a matter of law: that Dujmovich's joinder was simply that—joining in the removal of the case to federal court— and not a waiver of any of the other procedural options available to defendants in the normal course of litigation.

Second, the court does not share plaintiff's critical view of Dujmovich's conduct in the state court after defendant Silver filed the Notice of Removal to this court. Based on the declaration of his counsel, Mr. Thomas (ECF No. 23.1), Dujmovich's state court filings appear perfectly reasonable. His March 22 objection to entry of default and March 30 motion to quash both preceded Mr. Thomas's April 5 realization that Dujmovich had, in fact, been properly served. Dujmovich then joined the Notice of Removal within a few days on April 8, and his counsel represents to the court that "no actions were taken on behalf of Dujmovich in state court" thereafter. (ECF No. 23 at 8.) Soon after, on April 16, 2021, Dujmovich filed a joint motion to dismiss (with defendant Schultz) in this court, primarily asserting that plaintiff fails to state a claim—confirming his intent that this action be litigated in federal court. (See ECF No. 19.1 at 12-19.) Dujmovich unequivocally consented to removal in his April 8th joinder, and none of his surrounding litigation conduct raises any doubt about that express consent.

Plaintiff also goes on to speculate about why Dujmovich did not initially consent to removal and might wish to keep the case in state court; and she even goes so far as to impute a conflict of interest between Mr. Thomas's various clients in this action. (ECF No. 17 at 7-9.) These arguments are neither relevant nor based on anything more than conjecture.

Finally, plaintiff's conclusory argument that the state law causes of action are better adjudicated in state court does not support remand. This case is properly removable based on the federal causes of action, and the court exercises its discretion to retain supplemental jurisdiction

24

over the state law claims which arise from a common set of facts.

**CONCLUSION**

Despite defendants' many missteps in removing this case—and in defending the removal—the undersigned concludes that the removal is not defective. PG&E's consent was not required to remove this case; the Notice of Removal did not need to explain the absence of PG&E's consent, although it would have been better to do so; and because Dujmovich's later unequivocal joinder in the removal cured the prior lack of unanimity, there is no basis to remand for failure to explain his absence. Accordingly, the undersigned recommends denying plaintiff's motion to remand.

**ORDER**

In light of these findings and recommendations, the undersigned resets a schedule to complete the briefing of the pending motion to dismiss by defendants Schultz and Dujmovich (ECF No. 19):

1. Plaintiff shall file any opposition in response to the motion to dismiss no later than June 10, 2021;

2. Defendants Schultz and Dujmovich shall file any optional reply no later than June 24, 2021.

The motion remains under submission (ECF No. 21 at 2), so no hearing is set. The court intends to resolve this motion to dismiss along with the already briefed co-pending motion to dismiss by defendant Silver (ECF No. 6). If the court subsequently determines that a hearing is needed on either motion to dismiss, it will be scheduled at a later date with notice to the parties.

**RECOMMENDATIONS**

It is HEREBY RECOMMENDED that:

1. Plaintiff's motion to remand this action to state court (ECF No. 17) be DENIED; and

2. This case be referred again to the undersigned for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  May 25, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

AW, gian.0477